We will move to the last case on the calendar, which is United States v. Castro-Hurtado, Pineda-Torres, Rivas-Ibarguen, and Grueso-Cardenas. I'm going to put my briefcase down. I'll just move it up there. If I could just have a minute to get set up here. Do you need that table pulled back a little to give you a little more room? I probably could do that. Could you come forward and give me a hand? Pull it that way a little bit. Outward a little bit. Yeah, so I can get a little closer. There we go. Good. Good. Thank you. All right. Perfect. Thanks. Thank you. May it please the Court. I'm David Kernel occurring for the United States in this case. And we bring before this Court a sentence which we feel was inappropriate for a number of reasons. Basically what we have here is the district court took a 4,000-pound cocaine case and tried to equalize it with a 165-pound cocaine case that had a lot of problems in it. Now, the way that this was done by the district court was to first find that the cases were related and then to apply two departures which we contend were inappropriate under the circumstances, the first departure being for a combination of circumstances. And in that situation, the court said as its third reason, and that's the only one we're concerned with in this particular respect, that the sentence recommended is longer than the sentences recommended and imposed in another case. We contend that if just one of those reasons was wrong in that combination, that the court should reverse and send it back. Now, what the court did in finding that there was a relationship between the cases we submit was really incorrect. The court said they were related. We agreed they were related but for a very limited purpose, and that is for a jurisdictional purpose. What the court was really saying was that this case was similar to the other case. And in that respect, we disagree completely that the two cases were similar. Mr. Cournot, can I ask you a couple of sort of practical questions? Yes. My understanding is that all of the defendants have finished serving their sentences and have been released, and at least one of them has been deported. I understand that. So have all of them now been deported? I can't answer that question. We know only as to one? They've all been deported. All of them are gone. Okay. So assuming that we agree with you and we reverse and remand, what happens next? Nothing. They can be resentenced. In absentia? Yes. Yes, I think the cases that I cited to the court in a 28J letter that was sent up are very clear. Both the case from this circuit and then a case from the 11th Circuit and the 6th Circuit, which follow up on this Court's case, indicate very clearly that the fact that they've served their sentences and been deported is irrelevant. I understand because of the fact that if they come back, then they're still under a period of supervisory. Sure. Although, as a practical matter, they're not being supervised by anybody at this point. But the next question that I have, which I think is more of a practical one, is if we send this back to Judge Gonzalez, they're going to be resentenced under the sentencing guidelines as they are now in effect as amended last December. And as I read those guidelines, she's going to be able to get within about two levels of where she wanted to go. And so as a practical matter, she could do pretty much the same thing. And two levels isn't going to amount to much in terms of the length of the sentence here. So why are we doing this? Well, because we believe that she, that even under the new guidelines, that she shouldn't even manipulate the sentence to get to the place that she wanted to be. We believe that these cases were significantly different. The facts were significantly different. There were reasons why we gave the sentence in the other case and why we recommended what we did in this case. She was fully aware of those reasons. And we should, in the case, if it were to go back, hopefully she would, for lack of a better term, come to her senses. Okay. And not try and manipulate the guidelines. So this doesn't have anything to do with the sentencing of the defendants as it does to, shall we say, educating the district judge on what her proper role is in implementing. I, yes, yes, that she, that the judge should not manipulate the guidelines. Knowing how hostile Judge Gonzales is to the government, I can understand why you would want to do this. Well, we just believe that a more objective view of the situation would have her realize that manipulating the guidelines, again, is not something that, in this case, that she should do in order to get down to such an incredibly low level. Let me go off on a tangent here. You can sentence these defendants in absentia? I would suggest we can. What case authority says that after you have disabled them from appearing for their own sentence, that you nonetheless can sentence them in absentia? Well, they could come back. You've deported them. But they could be paroled into the country. You're going to parole them into the country? Well, I mean, anything is possible. The cases that we cited to the court indicate that there's a chance that they may come back. And those were illegal alien-type cases. But there's a chance that they could come back. And I would suggest that you could, if, for example, they had not been deported, if they had served their sentences and were not deportable, they were on supervised release and they absconded. They were just gone. We could sentence them in absentia in that respect. But in this case here, you've thrown them out of the country and made it not possible for them to appear at their sentencing. Well, if they would care to appear at their sentencing, there are always parole letters that could be used to bring them back into the country. Well, that's going to work. Assuming that they would come back so that they could get longer prison terms. Well, what I'm saying is that the ---- so that you can come back into the United States to appear at Judge Gonzales' court so she could throw you in federal prison. Well, the option is this, that if, for some reasons known only to them, they decide to come in back into the United States, either bringing another load of cocaine or sneaking across the border to San Ysidro, they would be facing that fate. And so one way or another ---- You've already got them for being deported after having been convicted of a felony and then coming back in, you can, which is a 16-level ---- That's true, but that doesn't stop an awful lot of people from doing exactly that. And people who are in a much better position to ---- So really you just want to rub Judge Gonzales' nose in this? We want Judge Gonzales to understand, no, we don't want to rub her nose in it. What we want to do is tell her, or educate her, for lack of a better term again, that you can't manipulate, you shouldn't manipulate the guidelines in the way it was done here to drive a sentence in a 4,000-pound cocaine case down to 18 months. You ever win a battle and lose a war? That's happened. Isn't the only thing that you really can complain about that Judge Gonzales did was in finding it was a related case? No, we didn't. She found aberrant behavior. She found safety valves. She found some other things that Coon at that point in time allowed her to find. We agreed to safety valve. Aberrant behavior we disagree with, and we've made that part of our appeal because we believe that the aberrant behavior was not aberrant for all the reasons stated in our brief. But isn't the reason you believe it wasn't aberrant behavior because you conjecture that these people must have known more, they must have done more. You have no proof that they did, right? We have no substantive proof that they did. We are simply going on a lot of experience in a lot of cases that not only have been tried in our district but have come before this Court. And the fact of the matter is that if you'll recall, Mr. Alvarez in his presentation to the Court, when agreeing to drop the role another two points, said to the Court, I've reviewed the papers that were submitted, and based upon that, I will agree to an additional two-point reduction. Now, I would submit to the Court that that combined with our agreement to acceptance of responsibility covers any kind of behavior problems that these men may or may not have been suffering from and that you don't need to come up with some fictional idea that these are poor people from a poor country and that they somehow got suckered into taking 4,000 pounds of cocaine out on a boat in the open ocean, which is exactly what the Court did here. That's what the Court said, is that they just went out in Shanghai, these individuals, and brought them in and somehow impressed them into taking this very valuable boat with very valuable cargo out into the ocean. And that's clearly not the situation. And furthermore, as this Court, these cases are not similar, and it's very clear that you can't, even if they were similar, you can't reduce the sentences for disparate sentences because there were different charges involved, different cases, different charges. And for no other reason, the case has to be reversed on that particular ground. And I'd like to save any time I've got left. All right. Fire away. Thank you and good morning, Your Honors. Mark Windsor on behalf of Willington Rivas Ybarguen, and I will adopt the arguments of co-counsel as well. I will address the issues of mootness and double jeopardy in this case. The cases that have been cited and briefly discussed by the government here are cited or created before the Supreme Court case in Spencer, which is cited in my 28-J letter on behalf of Mr. Rivas Ybarguen. That case specifically decided the issue of mootness. It was only about mootness. And in that decision, Scalia indicated that the speculative purposes, the basis of denying mootness claims based on the speculation that someone will in the future violate the law is not valid, at least in the context of appeals that are not brought on the conviction itself. Spencer was an appeal of the parole revocation in that case. And it found quite clearly that many of the speculations that have been made would not apply where the sentence has been served. And that's the identical situation here in this case. We run into this all the time with habeas petitions, saying that because I'm still under supervised release, I can be jerked back and my sentence reinstated because it's all part of the punishment. And that may be true in the cases of those other cases. So you would distinguish that because why? Because it's the defendant who's bringing the claim? No. I would distinguish that in this case because they aren't on supervised release. They're on release. They've been deported, and therefore no supervision applies. Well, but supervised release was part of the judgment and commitment, wasn't it? Yes, it was. That's correct. So the mere fact that the probation office is not actively supervising doesn't mean that they still are not under the restraints of a three-year period of supervised release. If they come back in and they get arrested for doing it again, or if they simply re-enter illegally after being deported, they could be given additional time on this offense. Can't they counsel? Yes, but that's exactly the critical point. If they re-enter, and again, the language from Spencer, quoted in a 1974 case, but nonetheless, Spencer was opposed to cases cited by the government, says, we are unable to conclude on the issue of mootness. And this is at page 15 of that decision. The case is at 523 U.S. 1. At page 15, they quote another case, O'Shea v. Littleton. We are unable to conclude that the case or controversy requirement is satisfied by general assertions or inferences that in the course of their activities, respondents will be prosecuted for violating valid criminal laws. We assume the respondents will conduct their activities within the law and so avoid prosecution and conviction. In this case, as the Court's already pointed out, they have been ordered, barred from this country and forcibly removed. They have been told that they cannot come back, that there's no way they can come back, that they have, in fact, been deported for an aggravated felony. That conviction, the basis of the deportation, is not at issue here. Therefore, this type of speculation is exactly what's been barred by Spencer, and therefore, this case is moot. Now, one thing that also distinguishes all of the cases that have been cited by the government is that we also raised the double jeopardy issue here. And in double jeopardy, according to the Ninth Circuit case, Arianna Rios, I think, is the one that's decisive on this issue. It interprets the Supreme Court case that I believe is cited by the government, via Monte Marquez, as establishing that there is no reasonable expectation of finality of the judgment at two points, that being when the sentence is actually pronounced and when the sentence has begun to be served. And that is all that, via Monte Marquez, establishes. Arianna has to arrive at this conclusion because it ultimately dictates that where the sentence has been completed, there is a reasonable expectation of finality. So if the Court does not agree with my mootness interpretation, I submit it must agree with the double jeopardy prong. How do we square that with all of the language in our cases talking about supervised release being part of the punishment? It's part of the sentence. The mere fact that they're no longer in the custody of the Attorney General in the Bureau of Prisons does not mean that they have completed their sentence. They have been forcibly removed from the jurisdiction. I mean, that's the way that I would distinguish it. I believe the cases that discuss, I may be mistaken, but I believe those cases that discuss specifically the supervised release issue don't deal with a situation where a client or where the accused is removed by the very government. Usually we see them in the context of a subsequent revocation. And that's why I think you don't need to address, get to that point here. But I'm having a hard time. I hear what you're saying about the fact that they're not here. And if we were looking at this on a writ of habeas corpus, I would agree with you that we don't have jurisdiction because they're gone. But it seems to me that where they are still subject to punishment as part of the original conviction and sentence, that it's not moved. But again, I guess my main point as to that is that the only way that they could be subject to punishment is speculation that is prohibited by Spencer. In other words, you would have to speculate that they would violate the law in order to be subject to punishment. But that's what supervised release is all about. It is a tool designed to deter them from engaging in further conduct. But if they do, then they are going to, their punishment will be reinstated. I see that. And enhanced as a result of the period of supervised release. Yeah, I think that's an interesting point. Again, this issue came up relatively late in the case. Isn't that what happens as a practical matter? When a guy violates supervised release, he gets re-sentenced on the same original case. Right, that's correct. Whether he was deported or not. If he comes back illegally, he gets a supervised release violation. He gets a new illegal entry violation. Doesn't he? At least he does in Arizona. Yeah, he does. That's true. They get violated on supervised release as well. But I think in this case, with regard to, well, I mean, I think it's an interesting issue. And I'd like the opportunity to brief it some more. I think this is not. I just, I mean, I don't see how then you even have a double jeopardy argument. If we're right, and I think we are, because there's a number of cases that say just what Judge Collins said, then there is no subsequent or second prosecution for the same offense. They're still being punished under the first offense. Well, I think, though, that I guess the only issue I'd raise at this point is that, well, with regard to double jeopardy, if anyone would have a reasonable expectation of finality in this case, it would be these defendants, in this case, before the court. Because, again, they've. Because they've been deported? Because they've been ordered deported in the context of an appeal, told they cannot come back, are not under supervision, are outside the jurisdiction of supervised release. I think the key issue. But they're told that if they ever come back to the United States, the first thing they must do is immediately report. And there are. They're actually. I'm sorry. I don't mean. There are actually cases that address that in the 1326 issue. But this is the anti-1326 case. Because this is not a case where Mr. Rivas Ibarguen came to the United States illegally. Quite the contrary. He was seized in international waters off the coast of Costa Rica, forcibly brought to this country. He literally. He was forcibly brought by the Coast Guard to begin with. He didn't want to be here. Exactly. He had no intention of coming here. He certainly is not going to come back again since he's from Western. Where was he going? He was seized off of Costa Rica. I know. Where were they going? Well, according to the DEA intelligence reports that I've read in other cases, assumedly he was going either to Costa Rica or to a drop in the shores of Mexico. That's how they justify jurisdiction in many of these cases. That's going to go up through Mexico and say, okay, not a part of the record in this case. But that's. And you didn't challenge the jurisdiction, I take it. We did not. We filed one discovery motion and then we pled guilty soon thereafter. This was. Are you sharing time with somebody? I am. Thank you. Good morning. May it please the Court. My name is Jeremy Warren. I represent Mr. Hector Pineda-Torres. I had not planned on talking about the mootness, but I wanted to address one thing, which I believe the government is incorrect that these defendants could be sentenced in absentia if the court were to reverse. And that's simply because the Rule 43 of the Federal Rules of Criminal Procedure dictate that defendants' presence is required at certain proceedings from arraignment through trial. Sentencing is one of the listed proceedings at which a defendant's presence is required. There may be. It's an interesting issue because the argument, I guess, would be I'd be present, but for the fact that I've been deported and ordered not to come back. I think that the case law, and I wasn't prepared to discuss this morning, but the case law that I've seen with regard to proceeding without the defendant's presence is cases in which the defendant has voluntarily absent. That's where I was going. A case in trial where a defendant won't shut up and he's forcibly removed and that's deemed a voluntary removal. Or he flees. Or he flees. He's not going to finish the trial. Yeah. He won't be absent. Even in those cases, I don't think that the defendant necessarily gets sentenced. I think they'll proceed through trial. But in any case, we don't have a case where the defendants have voluntarily absented themselves. Quite to the contrary, they've been deported as aggravated felons and told never to come back. I wanted to turn to, and by the way, one other thing in that regard is that there is a bail statute for bail pending appeal. And Section 3142 is the bail statute for bail pending trial. 3143 under Title 18 is bail pending appeal. In a government sentencing appeal, the defendant is under Section 3143C, shall be ordered detained. And my position is that the government dropped the ball here. At the time that the defendants completed their time, all on the identical date, and were sent to immigration, the government, I think, if it had been interested in prosecuting this appeal and seeking a resentencing, not just rubbing a judge's nose in it, as the court has put it, would have taken efforts to file a petition to the court for bail pending appeal under Section 3143C. And your client would have been incarcerated by the, I guess, the Secretary of Homeland Security as a deportable alien because of his aggravated felony conviction. No, I think that that's, I don't know exactly what would have happened, but I think that the statute is clear. The court has no power to do anything other than to order the defendant detained. And I think what would have happened is with a detention order, the Homeland Security at that time, IMS, would have made sure that these people weren't deported. So I think that the point I'm trying to make is that the government, in a way, has willfully been the one to drop the ball and let these people go. And if they thought it through, they could have got the extra time out of these guys because by the time your appeal was heard, they would have served another couple years. Well, depending on how quickly the court rules, they certainly would have been in an extra four months. They were released on February 12th, I believe. The two issues with regards to the sentencing, the court was correct. What we're quibbling about here is essentially two points because the aberrant behavior, I don't think there's a significant issue here. That's something that clearly is squarely within the sound discretion of the district court. The government agreed that all four of the defendants who were sentenced were plainly among the least culpable defendants. They found them all similarly situated. And I can't remember the last time I saw the court of appeal reject a or grant a government appeal on aberrant behavior. I think the real issue comes down to really the two points for the disparity in sentencing. I believe that Your Honor has written the Copernic, was the author of the Copernic case, which is the case that most directly relates to this. And in that case, the court did hold that co-defendant sentencing disparity is not a proper ground for downward departure unless the defendants are convicted of the same offense. And we have a somewhat unusual, I think, and I don't know if the court wants to go through a whole exercise in terms of how that decision came to pass, but I think the whole law with regards to sentencing disparity is somewhat unusual because the Copernic case was based on the en banc decision in the Banuelos case, which was the 1326 appeal regarding sentencing disparity between districts. And the Banuelos case went back in its analysis and ignored the one case that came post coon, the Doss case, that said sentencing disparity is a proper ground for departure. And it didn't limit it to cases of co-defendants or anything regarding the offensive conviction or co-defendant versus non-co-defendant status. In the Banuelos decision, well, and we all know that Coon said that departures are either forbidden or they're not forbidden. If they're not forbidden, then the court may consider them. And, of course, Coon and the Supreme Court has never said that sentencing disparity is an improper factor for a downward departure. So I think that the best reading of Coon is that disparity in an appropriate circumstance is a ground for departure, and the Ninth Circuit said that in Doss. The Banuelos language that says what then this Court followed up with in Caperna was dicta in that case. That case dependent was determined on and decided on the fact that policy decisions in one jurisdiction is not a proper ground for downward departure in another jurisdiction because it simply is not a mitigating factor. But the big problem you've got here is that the defendants in the first quote were convicted of a completely separate crime. It's like the difference between a telephone count and a distribution count. And the government says they had proof problems, and there are all sorts of reasons why, and they only had 65 pounds of cocaine or 65 kilos. Right. Five kilograms a 10-year sentence makes. So I don't understand how it's such a huge disparity in terms of the amount. Two tons of cocaine is a lot of dough. It is a lot. But if you consider the – and I also have been involved in a number of other boat cases that seem to end up in the Southern District of California, and if you listen to the experts that are called by the government, and common sense says you have a go-fast boat, 35-foot boat with four engines on it loaded to the brim with gasoline. The two boats in our cases were identical, each with five Colombian fishermen as the pilots of this boat out in the middle of nowhere. Their drugs sunk, and the Coast Guard and the Navy, despite their best efforts and good nets, could only get 65 pounds or kilos, and that's all they had left. Right, but I don't see how – Are you saying that what we really should do is infer that the boat was loaded to the gills, and it must have had two tons, too? Absolutely. If these individuals had been charged and gone to trial, you can bet that there would have been a DEA expert who would have testified that that's exactly what happened, that they just did a good job of torching their boat. The government charged a different offense and took a plea to it. That suggests to me that maybe it wasn't quite that simple. Except that, Your Honor, first of all, the initial charge was identical. It was the 46 U.S.C. 1903. Secondly – Oh, so they took a plea to the – They took a plea. I see, as a result of plea negotiations. But even beyond that, Your Honor, the plea agreements that were tendered to the court in that case included factual, identical stipulations that the defendants had knowingly transported a large quantity of cocaine. So I think that that is what makes it a little bit different. In any case, I would suggest, Your Honors, that this case is something that – we now have the Feeney Amendment and the Coon analysis may have been altered forever. So this isn't a case that we necessarily need to use to educate judges or anybody else because we're essentially in a different world now. That's my question. I'm sorry. Go ahead, Jeff. With the new amendments that's now been passed, can this ever happen again? Where that ends up – let's put it this way, Your Honor. I'm not so sure that it could happen again this way. I think that the district courts have received the message, and Your Honor, as a district court judge, that there's a totally different mechanism for how departures are going to be analyzed by the court of appeal. We've got to resolve this case. What's your suggestion? I would suggest an unpublished memorandum of firm saying that the court was within its discretion to depart, that the court cited sentencing disparities as just one of several factors, and that the other factors were sufficient to justify the departure that was given, and to quote the language that I cited in my appeal memorandum from the Kuhn case, where the Kuhn specifically says remand is required in cases where proper and improper grounds have been cited, unless the court finds that the court would have imposed the same sentence. And I think the court could clearly do that in this case. Unless there are any questions, that's all for me. Thank you. Anybody else going to speak for your side? Can I briefly address the issue that was raised? Well, if you have time, go ahead. Thank you, Your Honor. With regard to the supervised release violation, the only thing that I could offer at this point is that I think there is a difference between a defendant's appeal on supervised release and the government's, because the government does not have any case in controversy in this case. A defendant, while still on supervised release, still has that supervised release, which may be reduced in light of the sentence. But the government does not have that case in controversy here. The only way supervised release could be violated would be a totally different set of facts. We're not talking about the supervised release. We're talking about the custodial sentence. Therefore the government's disabled supervised release. Excuse me? The government has disabled the whole supervised release mechanism. In this particular case, yes, and that's also correct. Mr. Curnow? Just a few remarks. First of all, as far as the whether on the mootness issue and whether or not we should have detained them, I think the court's comments are instructive in that had we done that, they would have been in here yelling that they'd completed their sentence, and why are we doing that? True enough, we did deport them, but once again, they can be brought back into the United States either by us sending them a letter, and that's not out of the realm of possibility, and or them coming back just as in the three cases that we decided. With regard to counsel's remark on aberrant behavior, and that is that in the grand scheme of things these were the people who were minimally involved, we don't disagree with that. In fact, we agree they were minimally involved. But that doesn't mean that their behavior within their responsibility was aberrant. They were just part of a grand scheme of things, and their behavior was part and parcel and was necessary for the completion of the events. Now, with regard to the Caperna case, as I recall in reading Caperna, Caperna does talk about Doss and reconciles Doss with the result that was obtained there, and while we agree that apparently disparate sentences can be a reason for a departure, it can't be in different cases where there are different charges, and that's clear from the cases that that's clear from Caperna. How do you respond to the point that was made that the charges were initially the same in the two cases, but for whatever reason your office took a plea to a different offense? Well, there are many times when an indictment will be returned, and then when things are considered and events unfold, some of which are in the record and some of which are not, things can change and the charges can change. Just purely on the record that we have before us, if I were defense counsel, I could have argued the life out of this case because there was 165 pounds of cocaine found floating in the debris field. Nobody on that other boat was seen to have their hands on it or even close to it. So if you're going to charge people with a conspiracy to possess or possession, you've got to show that they somehow had at least constructed possession, and that would be extremely difficult in a case of that nature. You mentioned in your opening remarks that you thought we could remand this case back and have the defendants resentenced. I was looking at Rule 43 and Rule 35 and Rule 10 and Rule 5, and I seem to see they all come to the conclusion that the defendant must be present at a sentencing. Absent Rule 35 motion to have the sentence reduced by the government. That would be true, but again, in cases where the defendant is absconded and I understand that. But what I'm saying is that if you take the logic of the cases where they're not there, that they don't have to be there to be resentenced. And again, we could send them a letter, say, would you please come back, and if they say, no, I don't think so, that's their choice. So at that point they've absconded. Yes. You could also do what the marshal service does, send them a letter telling them they've won the That's true. Thank you, Mr. Colonel. Thank you both. Thank you. Target is ordered to submit. It will be in recess until tomorrow morning at 9 o'clock. All rise. Court is adjourned.
judges: Trott, Tallman, Collins